IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SUMMIT COMMUNITY BANK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00137 (RDA/JFA) |
| | ) | |
| BYRON F. DAVID, | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Appellant Summit Community Bank's ("Appellant") appeal of the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court") Memorandum Opinion ("Opinion") concerning Appellant's Proof of Claims ("Claims"). Dkt. 1. The Court dispenses with oral argument because it would not aid in the decisional process. Loc. Civ. R. 7(J); Fed. R. Civ. P. 78. Accordingly, this matter is now fully briefed and ripe for decision. Considering Appellant's Brief (Dkt. 48), Appellee Byron F. David's ("Appellee") Brief (Dkt. 55), and Appellant's Reply (Dkt. 56), and for the following reasons, the judgment of the Bankruptcy Court as to Appellee's Objections to Appellant's Claims is REVERSED and REMANDED to the Bankruptcy Court for further consideration in accordance with the guidance set forth below.

I. BACKGROUND

A. Procedural Background

On July 10, 2018, Appellee filed a Chapter Seven bankruptcy petition with the Bankruptcy Court. Dkt. 49-1, 4. Thereafter, Appellant filed the five Claims against Appellee's bankruptcy estate—Claim Numbers 3-3, 4-3, 5-3, 6-3, and 7-3. *Id.* at 32-70. Appellee objected

1

to each of those Claims. *Id*. at 81-98. On April 10, 2019, the Bankruptcy Court converted Appellee's Chapter Seven bankruptcy action to one under Chapter 11. *Id*. at 10.

Subsequently, Appellee filed a Motion of Summary Judgment with the Bankruptcy Court, which Appellant opposed, and the Bankruptcy Court denied. *Id*. at 15, 17, 22. After denying Appellee's Motion for Summary Judgment, on October 9, 2019, the Bankruptcy Court held an Evidentiary Hearing on Appellee's Objections to Appellant's Claims. *Id*. at 24, 25.

B.  Factual Background

At the Evidentiary Hearing, it was established that on July 6, 1991, Appellee married Lisa David ("Ms. David"). Dkt. 54-6, 69. On August 29, 2012, Ms. David took her life following a conversation that she and Appellee had regarding finances. *Id*. at 71-73.

From 2004 to 2012, Appellee partially owned Blue Ridge Technical Services, Incorporated ("BRTS"), which provided "consulting network services." *Id*. And from 2005 until her death in 2012, Ms. David also worked for BRTS. *Id*. at 70. There, she "wrote [BRTS's] . . . tax returns," handled "expense checks[,]" and "help[ed] [ ] review contracts . . . [and] benefits." *Id*. In addition to those responsibilities, Ms. David was involved in three real estate ventures (the "David Entities"), in which Appellee seemed to have had no involvement. *Id*. at 78.

Over a period of time, Appellant issued five loans to the David Entities, which formed the basis of the dispute before the Bankruptcy Court. Dkt. 49-1, 33-80. The chart below sets forth the loans that Appellant issued to the David Entities and to which Appellant filed Claims during the pendency of the bankruptcy proceedings. *Id*. 37, 47, 55, 65, 75.

| Loan Number | Date of Loan Agreement | Entity to which Loan was Issued | Principle Loan Amount | Related Claim Number |
|---|---|---|---|---|
| 359186 | September 15, 2005 | David-Cantrall and Associates, | $2,160,000.00 | Claim 3-3 |

2

|   |   |   |   |   |
|---|---|---|---|---|
|   |   | Inc. |   |   |
| **358003** | June 27, 2005 | David-Cantrall and Associates, Inc. | $300,000.00 | Claim 4-3 |
| **358367** | July 15, 2005 | DCF I, LLC | $660,000.00 | Claim 5-3 |
| **360540** | January 5, 2006 | David-Cantrall and Associates, Inc. | $300,000.00 | Claim 6-3 |
| **362232** | April 28, 2006 | Luck Homes, LLC | $199,750.00 | Claim 7-3 |

According to Appellee, he did not know about the loans until after Ms. David died. Dkt. 54-6, 78-79. However, Appellant maintained that Appellee was listed as the guarantor for each of the loans, as reflected by a series of notary-acknowledged Guarantees and Allonges.[1] *Id*. at 196-97. During the Evidentiary Hearing, Appellee called Victoria Melby ("Ms. Melby")[2] and Kerry Self ("Ms. Self"), who Appellant contended were two of the notaries that acknowledged the documents that supported its Claims. Dkt. 54-6, 195-96. In light of Ms. Self's and Ms. Melby's testimony that they did not recall those specific documents nor remember seeing Appellee sign those documents on the particular day in question, Appellee maintained that he did not sign the Guarantees and Allonges that supported Appellant's Claims and contended that Ms. David forged his signature on the Allonges and Guarantees without his knowledge. *Id*. at 206.

In further support of his theory, Appellee also called Ellen G. LoCascio ("Ms.LoCascio"), a retired Central Intelligence Agency ("CIA") officer and a long-time family friend of Appellant and Ms. David. Dkt. 54-5, 87. Ms. LoCascio testified that she went to Appellant's home on August 29, 2012, after she learned that Ms. David had died. Dkt. 54-5, 88,

---

[1] The Allonges in this case appear to have been an agreement that certain terms of the loans are at issue would be modified. *See e.g.*, Dkt. 54-3, 19.

[2] In some instances in the record, Ms. Melby is referred to as "Victoria DeMeza," as "DeMeza" was her maiden name. *See* Dkt. 54-6, 195. For consistency, throughout this Opinion, this Court will refer to her as Ms. Melby.

89.  Ms. LoCascio further explained that after learning that Ms. David had taken her life, she "started going through [ ] [Ms. David's] professional and personal things" in an effort to determine why she had done so.  *Id*. at 89.  And upon doing so, she observed "hundreds of documents" that were "shredded" in Ms. David's home office.  *Id*. at 90.  Many of the documents, Ms. LoCasico claimed, were "altered and manipulated" and in Ms. LoCasico's opinion, it appeared that someone had "cut and paste" certain documents.  *Id*.  Amongst other items, Ms. LoCasico recalled seeing papers that concerned "six or seven property loans," and certain BRTS "technical documents" that had been altered.  *Id*.  Appellee argued that LoCasico's testimony supported a finding of fraud.  Dkt. 54-6, 208.

At the conclusion of the Evidentiary Hearing, the Bankruptcy Court took the matter under advisement, *id*. at 212, and on January 27, 2020, issued its Opinion concerning Appellee's Objections to Appellant's Claims.  *Id*. at 218-32.  Therein, the Bankruptcy Court overruled Appellee's Objection to Claim Number 4-3 and sustained his Objection to Claim Numbers 3-3, 5-3, 6-3, and 7-3.  *Id*. at 219.  Appellant then appealed the Bankruptcy Court's determinations as to Claim Numbers 3-3, 6-3, and 7-3.

## II.  STANDARD OF REVIEW

"When reviewing a decision of the Bankruptcy Court, a district court functions as an appellate court and applies the standard of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526-27 (E.D. Va. 2010) (citation omitted).  Thus, the district court reviews questions of fact under the "clearly erroneous" standard.  *Id.*  "The clear error standard requires 'a reviewing court [to] ask whether on the entire evidence, it is 'left with the definite and firm conviction that a mistake has been committed.'"  *United States v. Span*, 789 F.3d 320, 325 (4th Cir. 2015) (quoting *Easley v.*

*Cromartie*, 532 U.S. 234, 242 (2001) (third level quotations and citations omitted)). Legal conclusions are reviewed *de novo*. *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). In cases where the issues present mixed questions of law and fact, the Court deploys "a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts." *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996) (citation omitted).

## III.  ANALYSIS

Appellant appeals two aspects of the Bankruptcy Court's ruling. First, Appellant maintains that the "Bankruptcy Court erred in sustaining [ ] [Appellee's] [O]bjections to [ ] [Appellant's] [ ] Claims by failing to apply applicable law regarding the legal weight of notary acknowledgements and the burden necessary to rebut such notary acknowledgements." Dkt. 48, 13. Second, Appellant argues that the "Bankruptcy Court erred in sustaining [ ] [Appellee's] [O]bjections to [ ] [Appellant's] [ ] Claims by relying upon evidence which was not offered at the Evidentiary Hearing on October 9, 2019." *Id*. at 32. The Court will address both issues in turn.

### A.  The Weight Afforded to the Guarantees and Allonges

As set forth above, the thrust of Appellant's first argument on appeal is that the Bankruptcy Court erred when it "fail[ed] to accord the notary acknowledgements on the [G]uaranties and Allonges the proper weight," and that the court declined to "shift the burden of proof to [ ] [Appellee]" after the Guaranties and Allonges were admitted into evidence. *Id*. at 13. To that end, Appellant asserts that the Bankruptcy Court improperly weighed the admitted Guarantees and Allonges because the Bankruptcy Court expressly "stated that it gave 'no weight to Ms. Melby's acknowledgements and decline[d] to conclude that any of the signatures on the

photocopied documents she acknowledged [ ] [were] genuine.'" *Id*. at 25 (citing Dkt. 54-6, 225). Appellant contends that as a matter of law, it was improper for the Bankruptcy Court to assign no weight to a notary acknowledgement because a notarized document has "a legal presumption of validity." Dkt. 48, 25.  Appellant contends that as a factual matter, reversal of the Bankruptcy Court determination is warranted because Appellee did not present sufficient evidence of non-appearance or fraud, and that the Bankruptcy Court's analysis was factually deficient in other respects. *Id*. at 25-29, 32.

In response, Appellee contends that the "Bankruptcy Court properly sustained [ ] [his] [O]bjections to [ ] [Appellant's] Claim [ ] [Numbers] 3-3, 5-3, 6-3[,] and 7-3 by making factual determinations that those Claims were based on documents that were 'fabricat[ed]' and 'not genuine.'" Dkt. 55, 7.  These findings, Appellee reasons, are "consistent with Virginia law." *Id*. at 8.

As a general matter, the Bankruptcy Code imposes a "burden shifting framework for proving the amount and validity of a claim." *Harford*, 372 F.3d at 640.  Federal Rule of Bankruptcy Procedure 3001(f) provides that "[a] proof of claim executed and filed in accordance with" the Federal Bankruptcy Procedure Rules "shall constitute *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see also Harford*, 372 F.3d at 640 (finding that when a creditor files a proof of claim, that "constitutes *prima facie* evidence of the amount and validity of the claim").

Once the creditor has filed the proof of claim, "[t]he burden then shifts to the debtor to object to the claim." *Harford*, 372 F.3d at 640 (citing 11 U.S.C. § 502(b); *Canal Corp. v. Finnman*, 960 F.2d 396, 404 (4th Cir. 1992); 4 Collier on Bankruptcy ¶ 502.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2004)).  In terms of the burden of proof that a debtor must

6

satisfy in this circuit, the Fourth Circuit noted that it "ha[d] not previously addressed how the bankruptcy rules allocate the burden of proof for purposes of establishing the amount and validity of a claim filed pursuant to 11 U.S.C. § 501(a)."  *Harford*, 372 F.3d at 640 n.2. Moreover, this Court has not found, and the parties have not cited, a more recent Fourth Circuit opinion wherein the court expounded upon the precise contours of the burden that a debtor must satisfy to overcome a creditor's *prima facie* proof of claims.

However, the Fourth Circuit in *Harford* indicated that it "agreed with [ ] [its] sister circuits that ha[d] addressed the issue."  372 F.3d at 640 n.2 (citing *Juniper Dev. Group v. Kahn*, 993 F.2d 915, 925 (1st Cir. 1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*.") (emphasis in original) (citations omitted); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("It is often said that the objector must produce evidence equal in force to the *prima facie* case . . . .  In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.") (citations omitted); *Fabricators Inc. v. Tech. Fabricators, Inc.*, 926 F.2d 1458, 1465 (5th Cir. 1991) (finding that an objector must "demonstrate its good faith and the fairness of its conduct" to satisfy its burden); *FDIC v. Union Entities*, 83 F.3d 1020, 1025 & n.3 (8th Cir. 1996) (quoting with approval the bankruptcy's court's holding that "'parties objecting to a claim bear the burden of going forward to meet, overcome, or, at minimum, equalize the valid claim'") (quoting *In re Gridley*, 149 B.R. 128, 132 (Bankr. D.S.D. 1992) (third level quotations omitted)); *Agricredit Corp. v. Harrison*, 987 F.2d 677, 680 (10th Cir. 1993); *see also* 2 William L. Norton, Jr. Norton Bankruptcy Law and Practice § 41:6 (2d ed. 2003)).

Finally, should the debtor carry his burden, ultimately, the burden then shifts back to the creditor, who must prove by a preponderance of the evidence the amount and validity of the claim. *Harford*, 372 F.3d at 640 (citations omitted).

In the case at bar, Appellant filed five Claims, which set forth the validity and the amount of the Claims. Dkt. 49-1, 33-80. Upon doing so, as the Bankruptcy Court noted in its Opinion, the burden then shifted to Appellee to object to those Claims. Dkt. 54-6, 224. Accordingly, Appellee objected to each of the five Claims. *See* Dkt. 49-1, 81-185. In its Opinion addressing Appellee's Objections, the Bankruptcy Court correctly provided that "[o]nce, the objecting party [presents sufficient evidence to overcome the *prima facie* effect of the filed proof of claim] [ ], the burden shifts to the creditor to establish the amount and validity of its claim." Dkt. 54-6, 224. Thus, the Bankruptcy Court correctly identified this burden-shifting requirement. *See id.* And in considering this legal framework, the Bankruptcy Court held that Appellee met its burden as to Claim Numbers 3-3, 5-3, 6-3, and 7-3, but failed with respect to the one remaining Claim—Claim 4-3. *See id.* at 219.

Yet, Appellant takes issue with the Bankruptcy Court's determination that Appellee satisfactorily objected to four of the five Claims. Dkt. 45, 13-32. Some of Appellant's concerns are with the Bankruptcy Court's legal determinations concerning the weight that should have been afforded to the notary-acknowledged Guarantees and Allonges that Appellant used to support its Claims. *See* Dkt. 48, 18-30. Appellant's other arguments stem from the Bankruptcy Court's application of those legal principals to the facts of this particular matter. *See id.* Thus, this first issue on appeal presents a mixed question of fact and law.

In terms of the legal issue—whether the Bankruptcy Court attributed the proper weight Appellant's acknowledged documents—both parties recognize that:

> [i]t is settled in Virginia that taking and certifying of acknowledgments is a judicial act. Where it is admitted or established that there was an appearance before the certifying officer, his determination of the matters involved has the conclusive force and effect of a judgment and imparts absolute verity, and cannot be collaterally attacked. It cannot be impeached, even directly, save in a court of equity, and not then except for fraud.

*Murdock v. Nelms*, 212 Va. 639, 641 (1972) (citing *New v. H. E. Harman Coal Corp.*, 181 Va. 627, 634 (1943); *McCauley v. Grim*, 115 Va. 610, 612 (1913)); *see also* Dkt. Nos. 48, 15-16; 55, 11. In *Murdock v. Nelms*, the Virginia Supreme Court recognized that a notary acknowledgement could be impeached "by showing that the person who is alleged to have executed the instrument in question never appeared before the certifying officer and never actually acknowledged the instrument." 212 Va. at 642 (citations omitted). Thus, the Virginia Supreme Court ultimately indicated that a notary acknowledgment could be impeached under certain circumstances for "fraud or nonappearance[.]" *Id*. And under both forms of attack, the burden of proving the fraud or nonappearance rests on the party that alleges the deficiency. *Id*. The *Murdock* court also explained that notaries are "presumed to [ ] properly perform[ ] [ ] [their] duties[.]" *Id*.

Here, based on this Court's *de novo* review of the record, it is not readily apparent whether the Bankruptcy Court considered and applied this legal standard. The Bankruptcy Court did not expressly provide the standard that it applied to the notarized documents except to say that it gave "no weight" to the documents notarized by Ms. Melby and thereby "decline[d] to conclude that any of the signatures on the photocopied documents [that] she acknowledged were genuine." Dkt. 54-6, 225.

Appellee argues that Appellant's argument fails because cases from this Court, the United States District Court for the Southern District of West Virginia, and even the *Murdock* opinion, demonstrate that "chancellors sitting in courts of equity . . . are not forbidden from

9

examining and scrutinizing documents simply because they purport to contain notary acknowledgments." Dkt. 55, 13-15 (citing *Randall v. Clarke*, No. 3:14-cv-00652, 2015 WL 4705506 at * 12 (E.D. Va. Aug. 6, 2015) (finding that in the context of an affidavit that supported a criminal defendant's claim of innocence that "[t]he sheer fact that both affiants ha[d] a history of felony convictions cast[ed] doubt on the reliability of their testimony" where the affidavits "lack[ed] any visible seal or stamp[,][ ][were] entirely handwritten[,]" "lack[ed] [ ] any indication of where or when the notarization took place[,]" and "the notary's handwritten date, name, and place of notarization looked strikingly like" the defendant's); *Murdock*, 212 Va. at 640; *Bouvier-Iager Coal Land Co. v. Sypher*, 186 F. 644, 660 (S.D.W. Va. 1910), *aff'd*, 191 F. 1006 (4th Cir. 1911), *cert. denied*, 226 U.S. 613 (1913). "Instead," Appellee stresses, "courts are duty-bound to examine instruments of dubious provenance and must refuse to enforce those which they find to be fabricated and not genuine." Dkt. 55, 15.

However, Appellee's argument misses the point. To be sure, the standard is not that a notary acknowledgement is absolved from any and all review, but the fact remains that in Virginia, there is a certain manner in which courts are to review notary acknowledged documents (*supra*, p. 8-9), and it appears that that framework applies to the documents in question here. And in this case, it may very well be that Appellee presented sufficient evidence to overcome the presumption that the notaries here "properly perform[ed] [their] duties[.]" *Murdock*, 212 Va. at 642 (citations omitted). But at this juncture, *and without deciding*, this Court is not necessarily of the opinion that the Bankruptcy Court clearly erred in its factual determinations. Indeed, this Court is constrained to review only the cold record on appeal without having the unparallel advantage of seeing and hearing the witnesses testify. Thus, the Court will not speculate as to the propriety of the Bankruptcy Court's factual determinations without clarity as to the legal lens

through which the Bankruptcy Court viewed the evidence. As such, this Court REMANDS this matter to the Bankruptcy Court with the instruction that the Bankruptcy Court apply the proper standard (*supra*, p. 8-9) and consider how the evidence presented fits within that framework.

### B. Consideration of a Document that was Not Admitted into Evidence

The second issue on appeal is whether the "Bankruptcy Court erred in sustaining [ ] [Appellee's] [O]bjections to [ ] [Appellant's] [ ] Claims by relying upon [ ] [facts] . . . not [ ] [admitted] into evidence at the Evidentiary Hearing on October 9, 2019." Dkt. 48, 32. In its Opinion on Appellee's Objections to Appellant's Claims, the Bankruptcy Court referenced "Cindy Vu's Fraud Examination Report." *See, e.g.*, Dkt. 54-6, 225. Appellant argues that this was improper because "this document was not admitted into evidence at [the Evidentiary] Hearing, nor was it even offered into evidence. . . . The only place where this document appears in the entire record is [in] an attachment to [ ] [Appellee's] Motion for Summary Judgment— which the Bankruptcy Court denied." Dkt. 48, 32.

Appellee argues that the Bankruptcy Court's reliance on the Cindy Vu Fraud Examination Report is harmless error. Dkt. 55, 26. Appellee reasons that this is so because that report was "merely cumulative of other evidence presented at trial[.]" *Id*. at 26. Appellee notes that the Bankruptcy Court referenced the report multiple times in its Opinion, and in each instance, the reference merely summarized Appellee's and LoCascio's testimonies. *Id*.

Also, Appellee contends, consideration of the Cindy Vu Fraud Examination Report was not actually error. *Id*. at 28. Appellee maintains that this is because "[w]hen [ ] [Appellant] responded to [ ] [Appellee's] Motion for Summary Judgment, its objection to the Cindy Vu Report did not demonstrate" that the report was inadmissible. *Id*. (quoting Fed. R. Civ. P. 56(c)(2)). In turn, Appellee claims that the Bankruptcy Court could properly consider Cindy

11

Vu's Fraud Examination Report in adjudicating Appellee's Objections to Appellant's Claims. Dkt. 55, 28.

"When a [trial] court commits an evidentiary error," even one so significant that it "implicates a defendant's constitutional rights," the Fourth Circuit has "ordinarily review[ed] that error for harmlessness." *United States v. Poole*, 640 F.3d 114, 118 (4th Cir. 2011) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967); *Bauberger v. Haynes*, 632 F.3d 100, 104 (4th Cir. 2011). Thus, this Court will review the question of whether the Bankruptcy Court improperly considered facts not admitted into evidence during the Evidentiary Hearing for harmless error.

The Court recognizes, and the parties seem to agree, that the Cindy Vu Fraud Examination Report was neither offered nor admitted into evidence during the Evidentiary Hearing. Generally, "'[i]mproper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error.'" *United States v. Seidman*, 156 F.3d 542, 558 (4th Cir. 1998) (quoting *Smith v. Firestone Tire & Rubber Co.*, 755 F.2d 129, 132 (8th Cir. 1985); *see also United States v. Wood*, 741 F.3d 417, 426 (4th Cir. 2013); *United States v. Clarke*, 2 F.3d 81, 85 (4th Cir. 1993); *United States v. Abu Ali*, 528 F.3d 210, 231 (4th Cir. 2008). Setting aside the fact that the report was not even admitted into evidence, in the case at bar, the references that the Bankruptcy Court made to the Cindy Vu Fraud Examination Report simply were not cumulative of the evidence that was presented at the Evidentiary Hearing, and therefore, it cannot be said that the error was harmless for that reason.

Indeed, in its Opinion, the Bankruptcy Court cited to an exhibit attached to Appellee's Motion for Summary Judgment, and made two references to the Cindy Vu Fraud Examination Report. First, the Bankruptcy Court provided that BRTS:

>hired Cindy Vu, a forensic accountant, to investigate [ ] [BRTS's] finances. Ms. Vu determined that [ ] [Ms.] David had embezzled more than three million dollars to pay [ ] [Appellant] and other creditors. Tr. 141:16-142:6. *See also* Debtor's Motion for Summary Judgment, Fraud Examination Report (Ex. J), at 2. Ms. Vu concluded that [ ] [Ms.] David misappropriated $2,812,202.81 in company funds by, among other things, failing to file business tax returns, failing to pay employee 401(k) accounts, skimming from accounts receivables and forging the signatures of Byron David, Kenneth Woolfrey and Debra Woolfrey to incur a bank loan on behalf of [ ] [BRTS] from the Bank of Clarke County in the amount of $500,000. *Id*. at 8.

Dkt. 54-6, 220. A review of the Evidentiary Hearing transcript shows that Appellee did testify that a forensic accounting of BRTS revealed Ms. David "had embezzled over $3 million of money" to pay loans from "Summit, Middleburg town taxes, real estate taxes, just—everything." *Id*. at 77-78. However, there was no testimony elicited from any of the Evidentiary Hearing witnesses that could support the additional facts described by the Bankruptcy Court in the passage above. The remaining facts referenced above simply were not admitted into evidence during that proceeding.

Second, the Bankruptcy Court concluded that the "Cindy Vu Fraud Examination Report confirm[ed] that [ ] [Ms.] David had forged several documents in order to secure loans for" BRTS. Dkt. 54-6, 226. Appellee argues that this finding "corroborates the testimony of [ ] [Ms.] LoCasio." Dkt. 55, 27. However, Ms. LoCasio did not testify to the nuances contained within the Cindy Vu Fraud Examination Report. *Compare*, Dkt. 52-2, 94-121, *with*, Dkt. 54-5, 86-103. Therefore, this Court finds that the Bankruptcy Court's references to the Cindy Vu Fraud Examination Report were not cumulative of the evidence presented at the Evidentiary Hearing, and therefore, the Bankruptcy Court's error was not harmless.

Still, Appellee argues that pursuant to Federal Rule of Civil Procedure 56(c)(2), the Bankruptcy Court did not err in considering evidence that was not offered or admitted at the Evidentiary Hearing. Dkt. 55, 28. Rule 56(c)(2) indicates that on a motion for summary

13

judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). To this end, Appellee effectively argues that because Appellant did not object to the admissibility of the Cindy Vu Fraud Examination Report at the summary judgment stage, "it was not error for the Bankruptcy Court's Memorandum Opinion to include references to that report following" the Evidentiary Hearing. Dkt. 55, 28. Implicit in Appellee's argument is the notion that failure to object to a document's admissibility at the summary judgment stage is a waiver of the objection at a later proceeding— say, for example, at a trial. Yet, Appellee cites to no authority to support that position, and the Court is also unaware of any such authority.

Appellant contends that the Federal Rules of Evidence "show a clear concern for keeping evidence that is not admitted from the finder of fact, such as a jury, so that the final judgment is not tainted by inadmissible evidence." Dkt. 48, 33. Without deciding the admissibility of the Cindy Vu Fraud Examination Report, the Court finds that Appellant's argument on this point is persuasive. Indeed, Federal Rule of Evidence 201 delineates the types of "adjudicative facts" of which a court may take judicial notice. *See* Fed. R. Evid. 201(a); (b). "Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201(a) advisory committee's note. Rule 201 indicates that "[t]he court may judicially notice a fact that is *not subject to reasonable dispute* because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) (emphasis added). Here, the facts that the Bankruptcy Court extracted from the Cindy Vu Fraud Examination Report were certainly in dispute, and thus, it was improper for the Bankruptcy Court to effectively take judicial notice of those facts as they were not offered or admitted into evidence during the Evidentiary Hearing.

14

Indeed, in a bench trial where a district court "gave some consideration to matters that were not in evidence in the case[,]" the Fourth Circuit "observ[ed] that th[at] district court's comments" in its memorandum opinion about the evidence that was not admitted "constitute[d] error," albeit, in that context, not harmless error. *Poole*, 640 F.3d at 117-20. Here, because the Court cannot find that the Bankruptcy Court's error in considering these extrinsic facts was harmless, this Court remands this case for further judicial review of the facts presented at the Evidentiary Hearing in accordance with this Court's guidance as set forth above (*supra*, p. 5-11).

## IV.  CONCLUSION

Accordingly, for the reasons provided above, the Bankruptcy Court's judgment as to Appellee's Objections to Appellant's Claims is REVERSED and REMANDED to the Bankruptcy Court for further proceedings.

It is SO ORDERED.

Alexandria, Virginia
March 31, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge