IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SUMMIT COMMUNITY BANK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00137 (RDA/JFA) |
| | ) | |
| BYRON F. DAVID, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Appellee Byron F. David's ("Appellee") Motion for Rehearing ("Motion") (Dkt. 58) with respect to this Court's Memorandum Opinion ("Opinion" or "Op.") filed on March 31, 2021 (Dkt. 57). Considering Appellee's Motion and the corresponding arguments contained therein, Appellee's Motion is DENIED and counsel for Appellant is ORDERED to show cause as to why this Court should not enter sanctions against Appellant pursuant to Federal Rule of Bankruptcy 8020(b) and Federal Rule of Civil Procedure 11(b)(3).

### I.  BACKGROUND

#### A.  Procedural Background

On July 10, 2018, Appellee filed a Chapter Seven bankruptcy petition with the Bankruptcy Court. Dkt. 49-1, 4. Thereafter, Appellant filed the five Claims against Appellee's bankruptcy estate—Claim Numbers 3-3, 4-3, 5-3, 6-3, and 7-3. *Id*. at 32-70. Appellee objected to each of those Claims. *Id*. at 81-98. On April 10, 2019, the Bankruptcy Court converted Appellee's Chapter Seven bankruptcy action to a Chapter 11 bankruptcy. *Id*. at 10.

Subsequently, Appellee filed a Motion for Summary Judgment with the Bankruptcy Court, which Appellant opposed, and the Bankruptcy Court denied. *Id*. at 15, 17, 22. After denying Appellee's Motion for Summary Judgment, on October 9, 2019, the Bankruptcy Court held an Evidentiary Hearing on Appellee's Objections to Appellant's Claims. *Id*. at 24, 25.

At the conclusion of the Evidentiary Hearing, the Bankruptcy Court took the matter under advisement, *id*. at 212, and on January 27, 2020, issued its Opinion concerning Appellee's Objections to Appellant's Claims. *Id*. at 218-32. Therein, the Bankruptcy Court overruled Appellee's Objection to Claim Number 4-3 and sustained his Objection to Claim Numbers 3-3, 5-3, 6-3, and 7-3. *Id*. at 219. Appellant then appealed the Bankruptcy Court's determinations as to Claim Numbers 3-3, 6-3, and 7-3. On March 31, 2021, this Court issued an opinion reversing and remanding the Bankruptcy court's judgment as to Appellee's Objections to Claim Numbers 3-3, 6-3, and 7-3. Dkt. 57. Appellee then timely filed a Motion for Rehearing pursuant to Federal Rule of Bankruptcy Procedure 8022 ("Rule 8022") on April 14, 2021. Dkt. 58. This Court did not request a response brief from Appellant and therefore no response was filed pursuant to Rule 8022(3).

B. Factual Background

At the Evidentiary Hearing, it was established that on July 6, 1991, Appellee married Lisa David ("Ms. David"). Dkt. 54-6 at 69. On August 29, 2012, Ms. David took her life following a conversation that she and Appellee had regarding finances. *Id*. at 71-73.

From 2004 to 2012, Appellee partially owned Blue Ridge Technical Services, Incorporated ("BRTS"), which provided "consulting network services." *Id*. And from 2005 until her death in 2012, Ms. David also worked for BRTS. *Id*. at 70. There, she "wrote [BRTS's] . . . tax returns," handled "expense checks[,]" and "help[ed] [ ] review contracts . . . [and] benefits." *Id*. In addition

to those responsibilities, Ms. David was involved in three real estate ventures (the "David Entities"), in which Appellee seemed to have had no involvement. *Id*. at 78.

Over a period of time, Appellant issued five loans to the David Entities, which formed the basis of the dispute before the Bankruptcy Court. Dkt. 49-1 at 33-80. The chart below sets forth the loans that Appellant issued to the David Entities and to which Appellant filed Claims during the pendency of the bankruptcy proceedings. *Id*. at 37, 47, 55, 65, 75.

| Loan Number | Date of Loan Agreement | Entity to which Loan was Issued | Principle Loan Amount | Related Claim Number |
|---|---|---|---|---|
| **359186** | September 15, 2005 | David-Cantrall and Associates, Inc. | $2,160,000.00 | Claim 3-3 |
| **358003** | June 27, 2005 | David-Cantrall and Associates, Inc. | $300,000.00 | Claim 4-3 |
| **358367** | July 15, 2005 | DCF I, LLC | $660,000.00 | Claim 5-3 |
| **360540** | January 5, 2006 | David-Cantrall and Associates, Inc. | $300,000.00 | Claim 6-3 |
| **362232** | April 28, 2006 | Luck Homes, LLC | $199,750.00 | Claim 7-3 |

According to Appellee, he did not know about the loans until after Ms. David died. Dkt. 54-6 at 78-79. However, Appellant maintained that Appellee was listed as the guarantor for each of the loans, as reflected by a series of notary-acknowledged Guarantees and Allonges.[1] *Id*. at 196-97. During the Evidentiary Hearing, Appellee called Victoria Melby ("Ms. Melby")[2] and Kerry Self ("Ms. Self"), who Appellant contended were two of the notaries that acknowledged the documents that supported its Claims. *Id*. at 195-96. In light of Ms. Self's and Ms. Melby's

---

[1] The Allonges in this case appear to have been an agreement that certain terms of the loans are at issue would be modified. *See e.g.*, Dkt. 54-3 at 19.

[2] In some instances in the record, Ms. Melby is referred to as "Victoria DeMeza," as "DeMeza" was her maiden name. *See* Dkt. 54-6 at 195. For consistency, throughout this Opinion, this Court will refer to her as Ms. Melby.

3

testimony that they did not recall those specific documents nor remember seeing Appellee sign those documents on the particular day in question, Appellee maintained that he did not sign the Guarantees and Allonges that supported Appellant's Claims and contended that Ms. David forged his signature on the Allonges and Guarantees without his knowledge. *Id*. at 206.

In further support of his theory, Appellee also called Ellen G. LoCascio ("Ms.LoCascio"), a retired Central Intelligence Agency ("CIA") officer and a longtime family friend of Appellant and Ms. David. Dkt. 54-5 at 87. Ms. LoCascio testified that she went to Appellant's home on August 29, 2012, after she learned that Ms. David had died. *Id.* at 88, 89. Ms. LoCascio further explained that after learning that Ms. David had taken her life, she "started going through [ ] [Ms. David's] professional and personal things" in an effort to determine why she had done so. *Id*. at 89. And upon doing so, she observed "hundreds of documents" that were "shredded" in Ms. David's home office. *Id*. at 90. Many of the documents, Ms. LoCasico claimed, were "altered and manipulated" and in Ms. LoCasico's opinion, it appeared that someone had "cut and paste" certain documents. *Id*. Amongst other items, Ms. LoCasico recalled seeing papers that concerned "six or seven property loans," and certain BRTS "technical documents" that had been altered. *Id*. Appellee argued that LoCasico's testimony supported a finding of fraud. Dkt. 54-6 at 208.

## II. STANDARD OF REVIEW

A motion for rehearing under Bankruptcy Rule 8022 must state with particularity each point of law or fact that the movant believes the district court has overlooked or misapprehended. Fed. R. Bank. P. 8022(a)(2).[3] Although the Rule does not specify a standard of review, the Court

---

[3] Because Federal Rule of Bankruptcy Procedure 8022(a)(2) does not permit oral argument, Appellant's Motion is not in violation of this Court's Local Rule 7(E), which ordinarily would require that the moving party set the motion for hearing or arrange with opposing counsel the waiver of oral argument.

employs the same standard as for a motion to alter or amend the judgment brought pursuant to Federal Rule of Civil Procedure 59(e). *See Maines v. Wilmington Sav. Fund Soc'y*, No. 3:15-cv-00056, 2016 WL 6462141, at *1-2 (W.D. Va. Oct. 31, 2016) ("Petitions for rehearing function to ensure that the court properly considered all relevant information in reaching its decision; they should not be used to simply reargue the plaintiff's case or assert new grounds." (internal quotation marks and citations omitted)); *Gillis v. Wells Fargo Home Mortg.*, No. 20-1047, 2020 WL 2768841, at *1 (4th Cir. May 28, 2020) (affirming the use of these Federal Rules of Civil Procedure as the standard for evaluating a request for a rehearing under Rule 8022); *Dandridge v. Scott, Tr. for Estate of Dandridge*, No. 3:18-cv-51, 2019 WL 4228457, at *1 (W.D. Va. Sept. 5, 2019) ("Although Rule 8022 is silent as to the appropriate standard for granting a motion for rehearing, district courts in this circuit have applied the same standard applicable to motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure.").

Accordingly, the motion may be granted on three limited grounds: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not previously available; or (3) to correct a clear error of law or prevent manifest injustice. *See United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). The motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright *et al.*, Federal Practice and Procedure § 2810.1, at 127-28 (2d ed. 1995)). "In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Id.* (quoting Wright *et al.*, *supra*, § 2810.1, at 124); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, 674 F.3d 369, 378 (4th Cir. 2012).

III.  ANALYSIS

Appellee raises four issues in his Motion.  First, Appellee submits that this Court overlooked the fact that the Guarantees supporting Claim Nos. 6-3 and 7-3 presented as exhibits 100 and 127, respectively, were not entered into evidence, and therefore Appellant could not prevail on those two claims.  Dkt. 58 at 4-6.  Second and relatedly, Appellee brings to this Court's attention the view that Appellant falsely claimed in its Reply Brief, Dkt. 56 at 5, that Exhibit 127 had been introduced into evidence and therefore should be subject to sanctions pursuant to Federal Rule of Bankruptcy 8020(b).  Dkt. 58 at 5 n.1.  Third, Appellee contends that this Court misapprehended the rule enunciated in *Murdock v. Nelms*, 212 Va. 639 (1972).  *Id.* at 9-16.  Fourth, Appellee maintains that this Court overlooked the Bankruptcy Court's findings that Appellant had "failed to produce evidence sufficient to prove the photocopied Guarantees supporting these claims were genuine copies of original documents signed by [Appellee]" and therefore an alternate basis exists to affirm the Bankruptcy Court's findings.  *Id.* at 6-9.

The Court will address each of these concerns in turn.

A.  Evidentiary Support for Claims 6-3 and 7-3

*1.  Appellant's Failure To Move the Guarantees for Claims 6-3 and 7-3 into Evidence*

Appellee argues that Appellant never moved to enter the Guarantees underlying Claims 6-3 and 7-3 into evidence before the Bankruptcy Court.  As a result, Appellee maintains that Appellant should forfeit both claims because they have not met the Statute of Frauds requirement under Virginia law.  *See* Va. Code § 11-2(4) (noting that for evidentiary purposes, a "writing [] signed by the party to be charged" is required "[t]o charge any person upon a promise to answer for the debt, default, or misdoings of another").  However, Appellant argued in briefing and before the Bankruptcy Court that the Allonges—representing each of the Guarantees underlying each claim—were entered into evidence, acknowledged by a notary public, "extended the maturity

6

date" and "cross-collateralized" each loan, "was executed by the original borrower and all of the guarantors for each loan, including the Debtor," of the loan and contained, on each page, the signature of "every guarantor in their role as guarantor." Dkt. 56 at 6; *see also* Dkt. 54-6 at 260:8-16; 260-61:25-3 (describing the sufficiency of the Allonges as evidentiary support for the Guarantees under Claims 6-3 and 7-3 and noting "[i]n theory, we would only really need one of those Allonges because it evidences all of the debt, cross-collateralizes all of the debt, cross-defaulted all of the debt").

This Court did not overlook the alleged failure to admit the Guarantees into evidence for Claims 6-3 and 7-3. Instead, this Court noted Appellant's concerns related to the "weight that should have been afforded to the notary-acknowledged Guarantees and Allonges that Appellant used to support its Claims" and found that the first issue on appeal "presents a mixed question of fact and law." Op. at 8. Implicit in the weight afforded to Allonges is Appellant's aforementioned argument that the Allonges introduced as Exhibit 113 and 142 for Claims 6-3 and 7-3, respectively, sufficiently evidenced the Guarantees underlying those claims. Notably, this Court's Opinion carefully described the Fourth Circuit's views regarding the evidentiary burden on both creditors and debtors in proving or disproving a proof of claim in a bankruptcy court. *Id.* at 6-8 (discussing *In re Harford Sands Inc.*, 372 F.3d 637 (4th Cir. 2004)). The burden-shifting framework in *Harford* should be applied to the Appellant's claims in this case as this Court's Opinion directs.

But the Bankruptcy Court opinion did not systematically apply the *Harford* standard in evaluating Creditor's *prima facie* proof of claims, which include the Guarantees and Allonges that did make it into evidence at trial. As a result, at this stage in the case, "the Court will not speculate as to the propriety of the Bankruptcy Court's factual determinations without clarity as to the legal lens through which the Bankruptcy Court viewed the evidence." *Id.* at 10-11. By remanding this

7

matter, the Bankruptcy Court will be obligated to apply the *Harford* standard, as described by this Court, to Appellant's reliance on the Guarantees and Allonges, including those that support the 6-3 and 7-3 claims. As such, Appellee presents no ground under Section 8022 to require a rehearing on this matter before this Court, as the Court's ruling already addressed Appellee's argument.

### 2. *Levying Sanctions Against Appellant's Counsel*

Relatedly, Appellee directs this Court's attention to the fact that Appellant stated in its Reply Brief, Dkt. 56 at 5, that Exhibit 127 was admitted into evidence to support the 7-3 claim. Federal Rule of Bankruptcy Procedure 8020(b) provides that this Court "may discipline or sanction an attorney or party appearing before it for other misconduct" but must first "afford the attorney or party reasonable notice, an opportunity to show cause to the contrary, and, if requested, a hearing." Federal Rule of Civil Procedure 11(b) holds an attorney to their representations before this Court including that any "factual contentions have evidentiary support." Otherwise, this Court may on its own, "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

In Appellant's Reply Brief filed before this Court, Appellant asserts that "[t]he guaranties introduced into evidence were *Summit's Hearing Exhibits 4, 7, 9, 11, 34, 37, 70, 127*." Dkt. 56 at 5. After examining the October 9, 2019 transcript of the evidentiary hearing before the Bankruptcy Court, this Court found no support for Appellant's claim that Exhibit 127 was among the exhibits admitted into evidence. *See* Dkt. 54-5 at 39-103; Dkt. 54-6 at 1-216. Curiously, Appellant claimed the same before the Bankruptcy Court during the evidentiary hearing that "[f]or Claim No. 7, we have Exhibit 127, which had the notary seal of Billy Jo Ferry . . . [which] is presumed valid." *See* Dkt. 54-6 at 260:12-15. During Appellant's oral argument before the Bankruptcy Court, counsel methodically laid out the exhibits supporting each claim for the judge, noting only those exhibits

8

which had been entered into evidence at that time. Based on this Court's review of the transcript, Exhibit 127 was the only exhibit Appellant mentioned which had not been admitted.

As such, this Court requests that the Appellant show cause as to his basis for claiming that Exhibit 127 had been admitted into evidence in light of this Court's remand to the Bankruptcy Court.

B. The *Murdock* Rule

In assessing whether Debtor actually signed as Guarantor to the Creditor's claims, Appellee's Motion readvances a particular reading of the review of notarized documents under the long-followed precedent of *Murdock v. Nelms*, 212 Va. 639, 641 (1972). Appellee claims that this Court committed a "clear error of law" and therefore is entitled to "an extraordinary remedy which should be used sparingly" whereby this Court affirms the issues on appeal rather than remand the case back to the Bankruptcy Court. *Pac. Ins. Co.*, 148 F.3d at 403 (quoting Wright *et al.*, *supra*, § 2810.1, at 124). In *Murdock*, as this Court's opinion provided:

> It is settled in Virginia that taking and certifying of acknowledgments is a judicial act. Where it is admitted or established that there was an appearance before the certifying officer, his determination of the matters involved has the conclusive force and effect of a judgment and imparts absolute verity, and cannot be collaterally attacked. It cannot be impeached, even directly, save in a court of equity, and not then except for fraud. *Murdock v. Nelms*, 212 Va. 639, 641 (1972) (citing *New v. H. E. Harman Coal Corp.*, 181 Va. 627, 634 (1943)[.]

Op. at 9.

Appellee's argument hinges on the second sentence of the above excerpt, namely that a notarized document is only afforded "absolute verity, and cannot be collaterally attacked" if "it is admitted or established that there was an appearance before the certifying officer." *Murdock*, 212 Va. at 641. This Court's opinion by no means invalidates that unambiguous, bright-line rule that the presence of a notarized seal on a document may very well be challenged when a party alleges nonappearance. But Appellee omits from his analysis the immediate preceding sentence in

9

*Murdock* that "[i]t is settled in Virginia that taking and certifying acknowledgements is a judicial act." *See also Harlow v. Clatterbuck*, 230 Va. 490, 493 (1986) ("[W]e held that the taking and certifying of an acknowledgment is a judicial act"); *Donohoe Const. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 538 (1988) ("Significantly, the taking and certifying of an acknowledgment by a notary public is a judicial act."). That sentence alone describes the necessary presumption of regularity given to notarized documents like those presented before the Bankruptcy Court. Importantly, *Murdock* teaches that such a presumption does not preclude a challenge to the legitimacy of the acknowledgement, which is not at issue here, or a challenge to the legitimacy of the signature of another party appearing in the acknowledged document.

Appellee provides no basis for reading into *Murdock* a rule that a notarized seal loses its legal luster as soon as a party cries foul. And yet, in its own words, the Bankruptcy Court gave "no weight" to certain notarized documents as being genuine. Op. at 5-6, 9. In other words, the Bankruptcy Court does not appear to have followed *Murdock* whereby a court must weigh the presumption of validity of a notarized document against the evidence presented by the challenging party. It makes sense that such a presumption exists irrespective of allegation, given that parties seek to obtain and require notarizations in the process of doing business. During the balancing, the presumption afforded to the notary seal adds teeth to the evidentiary burden the contesting party must carry. That burden requires demonstrating that the document was not actually signed by the party whose signature appears on the document by "evidence that is clear, cogent and convincing." *Martin*, 194 Va. at 445-46. Appellee fails to show that this Court's view of *Murdock* is a clear error of law requiring the extraordinary relief requested in his Motion.

The Bankruptcy Court discounted the presumption of validity as to notarized documents. Nor did the court provide a clear analytical framework for its analysis using the *Murdock* rubric.

Remanding with an instruction to the Bankruptcy Court keeps our legal system accountable to a long-followed precedent which controls this case, irrespective of the Bankruptcy Court's final factual decision on the evidence presented.

### C. The Bankruptcy Court's Ruling on the Sufficiency of the Evidence of Photocopied Guarantees

Appellee also contends that this Court's opinion overlooked the Bankruptcy Court's finding that "Summit failed to produce evidence sufficient to prove the photocopied Guarantees supporting these claims were genuine copies of original documents signed by Byron David." Dkt. 54-6 at 232. Appellee then claims that this finding resulted from Appellee's evidentiary objections "under Fed. R. Evid. 901, 902, 1002 and 1003" and therefore provides an alternative basis, "unrelated to *Murdock* or the Cindy Vu Report" for affirming the Bankruptcy Court's determination. Dkt. 58 at 2, 7-9. At bottom, Appellee is advancing an argument related to the admissibility of the photocopied Guarantees presented at trial.

Looking to the context of the Bankruptcy Court's opinion elucidates that court's finding. The dependent clause preceding that finding reveals that the court was discussing the *merits* of the case—*i.e.*, whether Appellant had met its burden of proof in demonstrating that Appellee had in fact signed the Guarantees underlying each of the claims. That is a task which requires on remand, as instructed by this Court's earlier Opinion, a clear-cut assessment and application of the *Murdock* test. Whereas, as far as this Court can tell, the Bankruptcy Court's statement was not a determination on the *admissibility* of the photocopies—*i.e.*, whether the documents presented before the Bankruptcy Court were in fact photocopies of the originals, *regardless of* the provenance of the guarantor's signature on the original. Therefore the Bankruptcy Court's finding does not present a separate basis for rejecting Appellant's claims apart from the *Murdock* burden-

shifting framework. Indeed the Bankruptcy Court will need to reconsider whether that finding accords with *Murdock*.

This Court also directs Appellee to the opinion issued in the cross-appeal of this same case where this Court provides reasons, applicable to each of the claims, for why Appellee's evidentiary objections under Federal Rules of Evidence 901, 902,[4] 1002, and 1003 are unpersuasive to this Court:

> A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Also, "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if [ ] all the originals are lost or destroyed, and not by the proponent acting in bad faith . . ." Fed. R. Evid. 1004.
>
> Here, in light of Federal Rule of Evidence 1004, this Court finds that the Bankruptcy Court did not err in admitting the Guarantee supporting Claim 4-3. Although it was not the original Guarantee, the evidence reflected that the original was destroyed and that [Summit] did not destroy that document in bad faith.
>
> * * *
>
> Yet, [David's] concerns go to the weight of the evidence, and not its admissibility. *See e.g.*, *Tinley v. Poly-Triplex Techs., Inc.*, No. 07-CV- 01136, 2009 WL 812150, at * 7 (D. Colo. Mar. 26, 2009) ("Certainly Defendants may attack the sufficiency of the copy of . . . [a contract] as well as [a] [p]laintiff's credibility, but these questions go to the weight, rather than the admissibility of the evidence.").

*David v. Summit Cmty. Bank*, 536 F. Supp. 3d 68, 77-78 (E.D. Va. 2021).

Because this Court's opinion already addresses Appellee's argument through the remand instruction to the Bankruptcy Court and because this Court, in the cross-appeal opinion,

---

[4] This Court directs Appellee's attention to Federal Rule of Evidence 902(8) providing that "[a] document accompanied by a certificate of acknowledgment that is lawfully executed by a notary public" is self-authenticating such that it "require[s] no extrinsic evidence of authenticity in order to be admitted." *See also Pierce v. Indseth*, 106 U.S. 546, 549 (1883) (confirming that courts "take judicial notice of the seals of notaries public, for they are officers recognized by the commercial law of the world"). As a result, Appellee's objection under Rule 902 was also improper.

specifically addressed Appellee's objections under the Federal Rules of Evidence to the photocopies of the Guarantees underlying the claims, Appellee's Motion loses all traction on this claim.

## IV. CONCLUSION

Accordingly, for the reasons provided above, it is hereby ORDERED that Appellee's Motion is DENIED; and it is

FURTHER ORDERED that, pursuant to Federal Rule of Bankruptcy 8020(b) and Federal Rule of Civil Procedure 11, counsel for Appellant provide this Court, within 14 days of the date of this opinion, a basis for not entering sanctions, pursuant to Federal Rule of Bankruptcy 8020(b) and Federal Rule of Civil Procedure 11(b)(3), as to counsel's proposition that Exhibit 127 was entered into evidence before the Bankruptcy Court.

It is SO ORDERED.

Alexandria, Virginia
February 1, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge